CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Thomas S. Kessler
Andrew Weaver
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Debtors
and Debtors-in-Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Genesis Global Holdco, LLC, *et al.*,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-10063 (SHL)<br><br>(Jointly Administered) |
| Genesis Global Capital, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>Digital Currency Group, Inc.,<br><br>Defendant. | Adv. Proc. No. 23-____ (SHL) |

**ADVERSARY COMPLAINT**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, Floor 38, New York, NY 10007.

Genesis Global Capital, LLC ("GGC") hereby files this complaint (the "Complaint") against Digital Currency Group, Inc. ("DCG") for declaratory judgment pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 2201, in connection with the allowed claims of Three Arrows Capital, Ltd. ("3AC") as against GGC in these Chapter 11 Cases, and in connection with that certain *Assignment and Assumption of Master Loan Agreement* dated July 14, 2022, as between Genesis Asia Pacific Pte. Ltd. ("GAP") and DCG (the "Assignment and Assumption Agreement") attached hereto as **Exhibit 1**, relating to, *inter alia*, (i) GAP's lending activities with 3AC, including all outstanding loans (the "3AC Loans"); (ii) that certain Master Loan Agreement dated January 10, 2019, and that certain Master Loan Agreement dated January 24, 2020 (together, the "MLAs"), which MLAs governed the 3AC Loans; (iii) that certain Pledge Agreement dated May 28, 2020, that certain Pledge Agreement dated November 16, 2021, and that certain Pledge Agreement dated January 27, 2022, all as amended, restated, amended and restated, supplemented or otherwise modified, which governed pledges of collateral in connection with the 3AC Loans (collectively, the "Pledge Agreements") (i)-(iii) collectively, the "Assigned Interests"); and in connection with that certain *Assignment and Assumption of 2022 Assignment and Assumption Agreement* dated February 7, 2024 (the "2024 Assignment Agreement") attached hereto as **Exhibit 2**, by which GAP assigned to GGC all of its rights and obligations under the Assignment and Assumption Agreement. In further support of this Complaint, GGC, by and through its undersigned counsel, respectfully alleges:

## NATURE OF THE ACTION

1. GGC commences this adversary proceeding pursuant to Rules 7001(1) and 7001(9) of the Federal Rules of Bankruptcy Procedure for a declaratory judgment by this Court that, pursuant to the Assignment and Assumption Agreement, by which DCG assumed all of the

burdens, obligations, and liabilities in connection with the Assigned Interests, including the 3AC Loans, as assigned to GGC pursuant to the 2024 Assignment Agreement, DCG is liable for any payments to 3AC in connection with the 3AC Loans, including any payments or distributions on account of the Allowed 3AC Claim Amount (as defined herein), which has been adjudged, determined, and allowed as a general unsecured claim against GGC in the amount of $33,000,000.00.

## THE PARTIES

2.      Plaintiff GGC is a limited liability company organized under the laws of Delaware that provided lending and borrowing services for digital assets and fiat currency.  GGC is 100% owned by Genesis Holdco, LLC ("Holdco"), which is 100% owned by DCG.

3.      Defendant DCG is a company organized under the laws of Delaware, with its principal place of business in Connecticut, that engages in venture capital investing in the digital currency market. DCG is authorized to do business in the State of New York under Section 1304 of the Business Corporation Law.

4.      3AC was an investment firm incorporated under the laws of the British Virgin Islands with a focus on trading cryptocurrency and other digital assets.  3AC commenced liquidation proceedings on June 27, 2022, before the Eastern Caribbean Supreme Court in the High Court of Justice, Commercial Division, Virgin Islands (the "BVI Court").  *Verified Pet. Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief*, *In re Three Arrows Capital, Ltd.*, Case No. 22-10920, ECF No. 2, at ¶ 1.  On June 29, 2022, Messrs. Russell Crumpler and Christopher Farmer were appointed as joint liquidators of 3AC (the "Joint Liquidators").  *Id*. at ¶ 26.

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).

6. This a core proceeding pursuant to 28 U.S.C. § 157(b).

7. This is an adversary proceeding brought pursuant to Rules 7001(1) and 7001(9) of the Federal Rules of Bankruptcy Procedure. This Court is authorized to issue declaratory relief pursuant to 28 U.S.C. § 2201. Pursuant to Rule 7008 of the Bankruptcy Rules, Plaintiff consents to the entry of final orders or a final judgment by this Court in this adversary proceeding if it is later determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

9. Between January 2019 and the date of 3AC's default in June 2022, GGC or GAP, as applicable, and 3AC had a lending and borrowing relationship that was governed by the MLAs. *See* Assignment and Assumption of Master Loan Agreement, at 1.

10. On July 20, 2020, GGC and GAP executed the Assignment and Assumption of Master Loan Agreement, pursuant to which pursuant to which GGC assigned to GAP all of its "right, title, benefit, privileges and interest in" and all of its "burdens, obligations and liabilities in connection with" the January 10, 2019 Master Loan Agreement, including the 3AC Loans and related Pledge Agreements, and GAP assumed and agreed to observe and perform "all of the duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities

-4-

. . . in connection with" the January 10, 2019 Master Loan Agreement. Thereafter, GGC had no remaining lending relationship with 3AC, and the Debtors' entire lending relationship with 3AC was through GAP. GAP's loans to 3AC were, however, funded with working capital provided by GGC, evidenced by book-entry intercompany transfers from GGC to GAP, which resulted in corresponding accounts payable from GAP to GGC.

11. On July 14, 2022, GAP and DCG executed the Assignment and Assumption Agreement, pursuant to which GAP assigned to DCG all of the "right, title, benefit, privileges and interest in" and all of the "burdens, obligations and liabilities in connection with" the Assigned Interests, including the 3AC Loans and related Pledge Agreements, and DCG assumed and agreed to observe and perform "all of the duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities . . . in connection with the Assigned Interests," including the 3AC Loans and related Pledge Agreements. Assignment and Assumption Agreement ¶ 2.

12. On January 19, 2023, each of the Debtors in these Chapter 11 Cases filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

13. On May 22, 2023, 3AC filed proofs of claim nos. 523, 526 and 527 (the "3AC Initial Claims") in these Chapter 11 Cases, to which the Debtors objected. *See Debtors' First Omnibus Objection (Substantive) to Claim Nos. 523, 526 and 527 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)*, ECF No. 530. On August 18, 2023, 3AC filed amended proofs of claim nos. 981, 982 and 990 (the "3AC Amended Claims" collectively with the 3AC Initial Claims, the "3AC Claims," and any such claim individually, a "3AC Claim"), to which the Debtors also objected. *See* Renewed 3AC Claim Objection.

14. The 3AC Amended Claims asserted (i) turnover claims under U.S. and BVI law

-5-

and conversion claims under New York state law (the "Turnover and Conversion Claims"),[2] (ii) preference claims under BVI law (the "Preference Claims" and together with the Turnover and Conversion Claims, the "3AC Loan-Related Claims"),[3] (iii) "potential" strong-arm claims under Bankruptcy Code Section 544 (the "Potential Strong-Arm Claims"), and (iv) "potential" preference claims under Bankruptcy Code Section 547 (the "Potential Preference Claims" and together with the Potential Strong-Arm Claims, the "3AC Potential Claims"). *See* 3AC Amended Claims at ¶ 37, 45, 50, 56, 65. In short, the Turnover and Conversion Claims sought damages in respect of certain of the collateral pledged by 3AC to GAP pursuant to the Pledge Agreements to secure loans extended by GAP to 3AC under the MLAs that was foreclosed upon by Genesis; and the Preference Claims sought avoidance of transfers made by 3AC to GAP pursuant to its obligations under the MLAs and the Pledge Agreements in connection with loans extended by GAP to 3AC under the MLAs.

15. The entire lending and borrowing relationship between GAP and 3AC was governed by the MLAs and the Pledge Agreements. *See* Renewed 3AC Claim Objection at ¶ 77; *see also Declaration of A. Derar Islim in Support of Debtors' Second Omnibus Objection (Substantive) to Claims No. 981, 982, and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* at ¶ 7-10 (stating that the lending and borrowing relationship governed by the MLAs and the Pledge Agreements was "the only contractual relationship" whereby loan principal and collateral were exchanged between GAP and 3AC).

---

[2] The Turnover and Conversion Claims sought approximately 13,780.04 BTC; (ii) approximately 17,455 ETH; (iii) four categories of tokens that were converted into BTC, comprised of 96.2 million ALGO tokens, 699,000 Solana tokens, 300,000 AVAX tokens, and 50,000 ETH (collectively, the "Substituted Collateral"); and (iv) approximately 9.2 million GBTC. *See* 3AC Amended Claims at ¶¶ 37, 50.

[3] The Preference Claims sought: (i) interest payments by 3AC to GAP totaling approximately $18 million between June 2 and June 3, 2022; a loan repayment by 3AC to GAP on May 6, 2022 in the amount of 115,000 USDC; (iii) 13,172,000 GBTC; and (iv) the Substituted Collateral. *See* 3AC Amended Claims at ¶ 45.

-6-

16.     Because DCG bears all "burdens, obligations, and liabilities in connection with" the Assigned Interests (i.e. all rights and obligations under the MLAs and Pledge Agreements), and because the 3AC Loan-Related Claims are asserted in direct connection with the MLAs and Pledge Agreements, DCG bears the liability for all amounts due to 3AC in connection with the 3AC Loan-Related Claims. *See* Assignment and Assumption Agreement at ¶ 2.

17.     Following extensive negotiation, the Debtors, DCG, 3AC and the Joint Liquidators entered into a settlement agreement, dated as of November 22, 2023 (the "Settlement Agreement"), resolving relevant disputes between the Debtors and 3AC concerning the claims asserted in, *inter alia*, the 3AC Amended Claims, while reserving the Debtors' rights to seek payment from DCG on account of the Assignment and Assumption Agreement. On November 9, 2023, the Debtors filed the *Genesis Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(A) for Entry of an Order Approving Settlement Agreement with the Joint Liquidators of Three Arrows Capital, Ltd.*, ECF No. 906, seeking approval of a settlement and compromise by and among (i) the Debtors, (ii) DCG, (iii) 3AC and (iv) the Joint Liquidators, resolving the 3AC Amended Claims.

18.     On November 30, 2023, the Court approved the settlement and compromise agreement and entered the *Order Approving Settlement Agreement Between the Genesis Debtors and the Joint Liquidators of Three Arrows Capital, Ltd.*, ECF No. 1012 (the "Order"), authorizing an allowed 3AC Claim in the amount of $33,000,000.00 (the "Allowed 3AC Claim Amount") and preserving Debtors' rights to obtain payment from DCG on account of such claim. Following the Joint Liquidators' having obtained requisite approvals from the BVI Court, on January 1, 2024, the Debtors filed the *Notice of Effective Date of Debtors' Executed Settlement Agreement Between the Genesis Debtors and the Joint Liquidators of Three Arrows*

*Capital, Ltd.*, ECF No. 1118.

19. The Debtors in these Chapter 11 Cases, have consistently communicated to DCG their view that, under the terms of the Assignment and Assumption Agreement, DCG would be liable for any amounts that are ultimately determined to be owed to 3AC on the basis of the 3AC Loan-Related Claims. Section 2(e)(v) of the Settlement Agreement states as follows:

> Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, the Genesis Debtors, their subsidiaries and affiliates do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action that any Genesis Debtor and any of their subsidiaries and affiliates has against any of DCG or DCG's past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

20. Pursuant to paragraph 6 of the Order, and as permitted by the terms of the Assignment and Assumption Agreement, which authorized the Debtors to "to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement in accordance with this Order," GAP and GGC entered into that certain 2024 Assignment Agreement, by which GAP assigned all rights and obligations under the Assignment and Assumption Agreement from GAP to GGC. 2024 Assignment Agreement at ¶ 2.

21. Now that the liability has been fixed, GGC is therefore entitled to declaratory judgment finding that amounts distributed or paid on account of the $33,000,000.00 Allowed 3AC Claim Amount must be paid by DCG, or alternatively, if GGC pays such amount, DCG shall reimburse GGC for such payments, plus interest thereon to the date of reimbursement.

# CLAIM FOR RELIEF

### COUNT ONE: Declaratory Judgment (28 U.S.C. § 2201)

22. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

23. This Court should declare that, pursuant to the Assignment and Assumption Agreement, DCG is liable for the Allowed 3AC Claim Amount, as an amount that has been finally determined by this Court to be owed to 3AC on the basis of the 3AC Loan-Related Claims.

24. Pursuant to the Assignment and Assumption Agreement, GAP has assigned to DCG all of its rights and obligations in connection with the 3AC Loans, and DCG has assumed the performance of all obligations in connection with the 3AC Loans. Assignment and Assumption Agreement at ¶ 2.

25. The 3AC Loan-Related Claims, which arise from the 3AC Loans made pursuant to the MLAs and the collateral pledges made pursuant to the Pledge Agreements, are among the liabilities assumed by DCG by operation of the Assignment and Assumption Agreement. The 3AC Loan-Related Claims were reduced to judgment in the amount of $33,000,000.00, or the Allowed 3AC Claim Amount.

26. Pursuant to the 2024 Assignment Agreement, GAP assigned to GGC all of its rights and obligations in connection with the Assignment and Assumption Agreement. 2024 Assignment Agreement at ¶ 2.

27. Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff is entitled to a judgment declaring that pursuant to the Assignment and Assumption Agreement, DCG is liable for payment of the Allowed 3AC Claim Amount of $33,000,000.00

due to 3AC.

## COUNT TWO: Pre-Judgment Interest (NY CPLR § 5001, 5004)

28. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

29. To the extent this Court orders that DCG is liable for payment on account of the Allowed 3AC Claim Amount of $33,000,000.00, and to the extent such payment is made by GGC to 3AC and later reimbursed by DCG, GGC is entitled to pre-judgment interest (NY CPLR § 5001(a)), calculated at the rate of nine percent per annum (NY CPLR § 5004(a)).  Such pre-judgment interest shall be calculated from the date of such payment of the Allowed 3AC Claim Amount by GGC to 3AC (NY CPLR § 5001(b)).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court award the following relief:

a) a judgment declaring that, pursuant to the Assignment and Assumption Agreement, DCG is liable for payment of amounts distributed or paid on account of the $33,000,000.00 Allowed 3AC Claim Amount found to be due to 3AC on account of the 3AC Loan-Related Claims and that DCG shall pay such amount to 3AC, or alternatively, if GGC pays such amount, that DCG shall reimburse GGC for such payments;

b) a judgment awarding pre-judgment interest at the rate of nine percent per annum running from the date of any payment on account of the $33,000,000.00 Allowed 3AC Claim Amount by GGC to 3AC; and

c) such further or other relief as the Court deems just and proper.

*[Remainder of page intentionally left blank.]*

Dated: February 7, 2024
      New York, New York

                                    Respectfully submitted,

                                    */s/ Luke A. Barefoot*
                                    Sean A. O'Neal
                                    Luke A. Barefoot
                                    Jane VanLare
                                    Thomas S. Kessler
                                    Andrew Weaver
                                    CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                    One Liberty Plaza
                                    New York, New York  10006
                                    T: 212-225-2000
                                    F: 212-225-3999

                                    *Counsel to the Debtors and Debtors-in-Possession*

# **EXHIBIT 1**

**Assignment and Assumption Agreement of Master Loan Agreement**

## ASSIGNMENT AND ASSUMPTION OF
## MASTER LOAN AGREEMENT

This Assignment and Assumption of Master Loan Agreement (this "Assignment Agreement") is made and entered into as of July 14, 2022, by and among Genesis Asia Pacific Pte. Ltd., a corporation organized and existing under the laws of Singapore ("Assignor") and Digital Currency Group, Inc., a Delaware corporation ("Assignee").

WHEREAS, Assignor and Three Arrows Capital Ltd., a corporation organized and existing under the laws of the British Virgin Islands ("Counterparty") are, among others, parties to (i) that certain Master Loan Agreement, dated as of January 10, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2019 Agreement") and (ii) that certain Master Loan Agreement, dated as of January 24, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2020 Agreement", and together with the 2019 Agreement, collectively, the "Agreements"), in each case, pursuant to which Assignor has extended loans to Counterparty;

WHEREAS, Assignor and Counterparty are parties to (i) that certain Pledge Agreement, dated as of January 27, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2022 Pledge Agreement"), (ii) that certain Pledge Agreement, dated as of May 28, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2020 Pledge Agreement") and (iii) that certain Pledge Agreement, dated as of November 16, 2021 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "2021 Pledge Agreement", and together with the 2022 Pledge Agreement and the 2020 Pledge Agreement, collectively, the "Pledge Agreements");

WHEREAS, Assignor wishes to assign to Assignee all of its lending activities with Counterparty, including any outstanding loans (such loans, the "Outstanding Loans");

WHEREAS, Assignor wishes to assign to Assignee all of its rights and obligations under the Pledge Agreements and related Collateral under the Agreements and the Pledge Agreements (collectively with the Outstanding Loans, the "Assigned Interests");

WHEREAS, Assignor is an affiliate of Assignee and Assignor and Assignee previously entered into that certain Assignment and Assumption Agreement, dated as of June 30, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time), and that certain Promissory Note, dated as of June 30, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time), which were, in each case, entered into solely for purposes of internal accounting as an accommodation among affiliates without giving effect to any change in beneficial ownership of the loans or other interests purported to be transferred therein; and

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

DocuSign Envelope ID: 2642EDF9-377E-4688-960C-E1023BF95239

1. **Capitalized Terms.** Capitalized terms used but not defined herein shall have the same meanings that are set forth for such terms in the Agreements.

2. **Assignment and Assumption.** Effective as of the date hereof, Assignor hereby assigns, contributes, transfers and sets over (collectively, the "Assignment") to Assignee all of Assignor's right, title, benefit, privileges and interest in and to, and all of Assignor's burdens, obligations and liabilities in connection with, the Assigned Interests. Assignee hereby accepts the Assignment and assumes and agrees to observe and perform all of the duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities of Assignor to be observed, performed, paid or discharged from and after the date hereof, in connection with the Assigned Interests. As of the date hereof, Assignor shall have no obligation to, and shall receive no benefit from Counterparty with respect to, the Assigned Interests

3. **Miscellaneous**.

    a. This Assignment Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

    b. The provisions of this Assignment Agreement are intended to be severable. If any provision of this Assignment Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability thereof in any other jurisdiction or the remaining provisions hereof in any jurisdiction.

    c. THIS ASSIGNMENT AGREEMENT AND ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATED TO THIS ASSIGNMENT AGREEMENT, WHETHER IN TORT, CONTRACT (AT LAW OR IN EQUITY) OR OTHERWISE, SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.

    d. This Assignment Agreement may be executed in any number of counterparts, and by different parties in separate counterparts, each of which when so executed and delivered shall be deemed an original but all of which when taken together shall constitute but one and the same instrument. Any signature delivered by a Party by electronic mail or pdf format shall be deemed to be an original signature hereto.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Assignment as of the date first set forth above.

**ASSIGNOR:**  **ASSIGNEE:**

**Genesis Asia Pacific Pte. Ltd.**  **Digital Currency Group, Inc.**

By: *Arianna Pretto-Sakmann*  By: *Michael Katz*
Name: Arianna Pretto-Sakmann  Name: Michael Katz
Title: Director  Title: Director of Legal and Regulatory

[Signature Page to Master Loan Agreement Assignment and Assumption]

WEIL:\98719122\6\41531.0003

# **EXHIBIT 2**

**Assignment and Assumption of 2022 Assignment and Assumption Agreement**

*Execution Version*

# ASSIGNMENT AND ASSUMPTION OF
## 2022 ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption of 2022 Assignment and Assumption Agreement (this "**2024 Assignment Agreement**") is made and entered into as of February 7, 2024 by and among Genesis Asia Pacific Pte. Ltd., a corporation organized and existing under the laws of Singapore ("**Assignor**") and Genesis Global Capital, LLC, a limited liability company organized and existing under the laws of Delaware ("**Assignee**").

WHEREAS, Assignor and Digital Currency Group, Inc., a Delaware corporation ("**Counterparty**") are, among others, parties to that certain Assignment and Assumption of Master Loan Agreement, dated as of July 14, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect from time to time, the "**2022 Assignment Agreement**"), pursuant to which Assignor assigned, contributed, transferred and set over to Counterparty all right, title, benefit, privileges and interest in and to, and all burdens, obligations and liabilities in connection with, the Assigned Interests;

WHEREAS, Assignor wishes to assign to Assignee all of its rights and obligations under the 2022 Assignment Agreement (the "**2024 Assigned Interests**");

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, the parties hereto do hereby agree as follows:

1. **Capitalized Terms.** Capitalized terms used but not defined herein shall have the same meanings that are set forth for such terms in the 2022 Assignment Agreement.

2. **Assignment and Assumption.** Effective as of the date hereof, Assignor hereby assigns, contributes, transfers and sets over (collectively, the "**Assignment**") to Assignee all of Assignor's right, title, benefit, privileges and interest in and to, and all of Assignor's burdens, obligations and liabilities in connection with, the 2024 Assigned Interests. Assignee hereby accepts the Assignment and assumes and agrees to observe and perform all of Assignor's duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities of Assignor to be observed, performed, paid or discharged from and after the date hereof, in connection with the 2024 Assigned Interests.

3. Miscellaneous.

    a. This 2024 Assignment Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

    b. The provisions of this 2024 Assignment Agreement are intended to be severable. If any provision of this 2024 Assignment Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability thereof in any other jurisdiction or the remaining provisions hereof in any jurisdiction.

c. THIS 2024 ASSIGNMENT AGREEMENT AND ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATED TO THIS 2024 ASSIGNMENT AGREEMENT, WHETHER IN TORT, CONTRACT (AT LAW OR IN EQUITY) OR OTHERWISE, SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.

d. This 2024 Assignment Agreement may be executed in any number of counterparts, and by different parties in separate counterparts, each of which when so executed and delivered shall be deemed an original but all of which when taken together shall constitute but one and the same instrument. Any signature delivered electronically by Assignor or Assignee or by pdf format shall be deemed to be an original signature hereto.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this 2024 Assignment Agreement as of the date first set forth above.

| | |
|---|---|
| **ASSIGNOR:** | **ASSIGNEE:** |
| **Genesis Asia Pacific Pte. Ltd.** | **Genesis Global Capital, LLC** |
| By: */s/ Andrew Sullivan* <br> Name: Andrew Sullivan <br> Title: Authorized Signatory | By: */s/ Derar Islim* <br> Name: Derar Islim <br> Title: Interim CEO |

3